UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESSEX INSURANCE COMPANY,

        Plaintiff,

vs.

DETROIT BULK STORAGE, INC.,
THE MORTON SALT COMPANY,
UNITED STATES STEEL CORP., and
PRAXAIR, INC.,

        Defendants.
_____/

Civil Action No.
11-cv-13277

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER
## DENYING DEFENDANT MORTON SALT COMPANY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (Dkt. No. 11)

On July 27, 2011, Essex Insurance Company ("Plaintiff") filed a Complaint in this Court seeking a declaratory judgment regarding its obligation under an insurance policy against Defendants Detroit Bulk Storage, Inc. ("DBS"), and the Morton Salt Company ("Morton"). (Dkt. No. 1.) Plaintiff filed an Amended Complaint on August 17, 2011, adding United States Steel Corporation ("US Steel") and Praxair, Inc. ("Praxair") as Defendants. (Dkt. No. 7.)

On September 1, 2011, Defendant Morton filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, for Abstention. (Dkt. No. 11.) Defendant DBS concurred in the Motion on September 6, 2011. (Dkt. No. 12.) Plaintiff filed a Response on September 29, 2011. (Dkt. No. 24.) Defendant DBS and Morton both filed Replies on October 21, 2011. (Dkt. Nos. 31 and 32.) Plaintiff filed a sur-Reply on October 26, 2011. (Dkt. No. 33.)

1

The Court held a hearing on December 21, 2011, out-of-state counsel for Defendant Morton, Paul J. Kozacky, was unable to attend due to inclement weather. The Court allowed Attorney Kozacky to review a transcript of the hearing and file a supplemental brief in support of Defendant Morton's Motion to Dismiss, which was filed on January 31, 2012. (Dkt. No. 41.) Plaintiff filed two Reply briefs to Defendant Morton's supplemental brief, on February 6 and 13, 2012. (Dkt. Nos. 42 and 43.)

On April 16, 2012, Plaintiff filed a Notice of Dismissal of the Duplicate State Court Action. (Dkt. No. 46.)

For the reasons stated below, the Court will DENY Defendant Morton's Motion to Dismiss.

## I. BACKGROUND

Plaintiff alleges that it issued a marine insurance policy (the "Policy") to Defendant DBS on July 16, 2010. The Policy insured property located at 530 East Great Lakes Avenue in River Rouge, Michigan, which was owned by Defendant US Steel and used by Defendant DBS under a lease agreement. The Policy included the following language:

### WHARFINGER'S[1] LEGAL LIABILITY

> This company will pay those sums that the Insured, as Wharfingers, become legally obligated to pay as damages because of liabilities imposed upon the Insured because of accidental loss or damage which may occur:
>
> A.  To watercraft and equipment, cargoes, freights, *and other interests on board* while in the care, custody or control of the Insured;
>
> B.  *To any property caused by* said watercraft and *their cargoes*;

---

[1]"Wharfinger" is defined as "One who keeps a wharf for the purpose of receiving goods thereon for hire." Ballentine's Law Dictionary, 3d Ed. 1366 (1968).

2

> all while at the locations described in the Liabilities Coverage Part Supplemental Declarations or adjacent moorings and *resulting from or arising out of the Insured's mooring or docking operations*.

(Am. Compl., Ex. A, Ins. Policy 8) (emphasis added.)

On July 16, 2010, at the request of Defendant DBS, Plaintiff amended the Policy to include Defendant Morton as an additional insured.[2]

On January 26, 2011, a freighter unloaded 11,000 tons of salt owned by Defendant Morton on top of a preexisting 90,000-ton pile of salt, also owned by Defendant Morton, at Defendant DBS's River Rouge facility. On January 28, 2011, the ground underneath the salt pile caved in, causing the salt to fall into a hole that filled with water from the St. Clair Canal. In addition, the cave-in damaged water mains owned and used by Defendant Praxair. Defendant Morton was able to recover 80,000 tons of the salt, but approximately 20,000 tons remained in the hole.

Defendants Morton, US Steel and Praxair have asserted claims against Defendant DBS for the loss and/or destruction of their property caused by the cave-in. Plaintiff alleges that the primary insurer responsible for general liability is Frankenmuth Insurance Company. Plaintiff seeks a declaratory judgment that its wharfinger's liability policy affords no coverages for the claims asserted by US Steel and Praxair against Defendants DBS and Morton.

On September 1, 2011, Defendants Morton and DBS filed suit in Wayne County Circuit Court against Essex and Frankenmuth Insurance Company, alleging breach of insurance contract and seeking a declaratory judgment, based on the instant incident.

---

[2]Plaintiff alleges that a copy of the Additional Insured Endorsement adding Defendant Morton to the policy is attached to the Amended Complaint at Exhibit B. (Am. Compl. ¶ 16.) However, neither the Amended Complaint nor Plaintiff's original Complaint include an Exhibit B.

3

## II. LEGAL STANDARD

Defendants seek dismissal for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Because the parties have not asked the Court to weigh evidence or resolve any factual disputes, the Court construes Defendants' motion as a facial challenge to the Court's subject matter jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996).

"When a 12(b)(1) motion attacks the face of a complaint, the plaintiff's burden to prove federal question subject matter jurisdiction is not onerous. The plaintiff must show only that the complaint alleges a claim under federal law, and that the claim is 'substantial.'" *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1249 (6th Cir. 1996) (citation omitted). the Court considers all allegations in the complaint as true. *DLX, Inc.*, 381 F.3d at 516.

## III. ANALYSIS

As an initial matter, the Court notes that Plaintiff has voluntarily dismissed the duplicate state court action in this case. (Dkt. No. 46.) Defendants' argument regarding abstention is therefore moot, and the Court will not address it in the instant Opinion and Order.

Defendants argue that the Court lacks admiralty jurisdiction over the Policy in this case, because the policy is not tied to a specific vessel and because it is not particularly concerned with maritime commerce. Defendants rely primarily on *New Hampshire Insurance Co. v. Home*

4

*Savings and Loan Co. of Youngstown, Ohio*, 581 F.3d 420 (6th Cir. 2009).

In *New Hampshire Insurance Co.* (hereinafter, "*NHIC*"), the Sixth Circuit held that an insurance policy that covered yacht dealer operations and marina operations was not within the scope of federal admiralty jurisdiction. *Id.* at 431. The Sixth Circuit first noted that determining whether a "maritime contract" falls within federal admiralty jurisdiction "depends upon the nature and character of the contract, and the true criterion is whether the contract has reference to maritime service or maritime transactions." *Id.* at 423 (citation and punctuation omitted). The Sixth Circuit further noted that the inquiry depended "on whether the *principal objective* of the contract is maritime *commerce*." *Id.* at 424 (citation omitted, emphasis in original). Then the Sixth Circuit found that the "yacht dealer operations" provision was outside federal admiralty jurisdiction, reasoning as follows: "By its very terms, the yacht-dealer provisions relate to boats as objects of commerce – i.e., 'stock for sale' – not as agents of maritime commerce." *Id.* at 427. Turning to the policy language regarding "marina operations," the Sixth Circuit likewise held that it was outside federal admiralty jurisdiction, specifically noting the distinction "between a contract relating to a particular vessel involved in a commercial operation as opposed to the overarching operation of a fixed structure that happens to involve boats" *Id.* at 431. The Sixth Circuit further explained as follows:

> Simply because a contract involves a marina does not mean it necessarily is a maritime contract. We must look at the nature of the contract and, in the case of an insurance policy, consider the specific interests insured. Applying that distinction in this case, we conclude that this insurance policy covering a yacht dealership and a marina falls outside the scope of our maritime jurisdiction, despite the fact that some of the services provided by the marina may relate incidentally to or facilitate maritime commerce.

5

*NHIC*, 518 F.3d at 431.

Defendants argue that, like the contract in *NHIC*, the instant Policy provides insurance for fixed structures, not maritime commerce interests, and is therefore not within the Court's admiralty jurisdiction. Generally, insurance contracts for the benefit of "fixed structures" are not considered maritime contracts within the Court's admiralty jurisdiction. *See NHIC*, 518 F.3d at 430-31. In *NHIC*, the Sixth Circuit cited with approval the Ninth Circuit's reasoning in *Royal Ins. Co. of America v. Pier 39 Ltd. Partnership*, 738 F.2d 1035 (9th Cir. 1984), which stated as follows: "Wharfage contracts are maritime if wharfage is provided to a specific vessel. . . . If there is no connection to a specific vessel, however, contracts relating to wharves generally are not within admiralty jurisdiction." *Id.* at 1037.

The Court finds that the instant policy is distinguishable from the policy at issue in *NHIC*. Specifically, in *NHIC*, the policy broadly insured "marina operations," while the instant policy is limited to coverage for loss or damage "[t]o watercraft and equipment, cargoes, freights . . . ." (Ins. Policy 8). Thus, unlike the marina policy in *NHIC*, which provided insurance coverage "relat[ing] specifically to the marina," *NHIC*, 518 F.3d at 429, the instant policy is a maritime policy because it provides insurance coverage specifically for objects of maritime commerce (i.e., watercraft, equipment, cargoes, and freights) while those objects are in the care, custody, or control of the owner/operator of the River Rouge facility. Although the policy insures the owner of a fixed structure, and thus does not relate to a specific vessel, the principal objective of the contract is to insure against loss to ships and their cargo and equipment while they are docked at the wharf. *Id.* at 430 (noting that the Supreme Court has observed "that a ship or vessel, used for navigation and commerce, . . . as well as her furniture and cargo, are maritime subjects, whereas

6

a 'fixed structure' that is not used for the purpose of navigation generally is not." (Citation omitted)). Accordingly, the Court finds that admiralty jurisdiction applies to the insurance contract at issue in this case.

## IV. CONCLUSION

For the reasons stated above, the Court will DENY the motions by Defendants Morton and DBS to Dismiss.

**SO ORDERED.**

Dated: 5-23-12
Detroit, Michigan

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE